UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LOCKHEED MARTIN CORPORATION, a
Maryland corporation,

        Plaintiff,

    v.

GLENCORE, LTD., individually and f/k/a,
d/b/a and/or successor in liability to Clarendon,
Ltd.,

        Defendant.

Civil Action No.: 1:15-cv-03636

Judge George B. Daniels
Magistrate Judge Andrew J. Peck

**FIRST AMENDED COMPLAINT**

Plaintiff Lockheed Martin Corporation ("Lockheed Martin") brings this Complaint against the above-named Defendant Glencore, Ltd., individually and f/k/a, d/b/a and/or successor in liability to Clarendon, Ltd., and in support thereof alleges the following:

### SUMMARY OF THE CASE

Lockheed Martin brings this action seeking full indemnity from the above-named Defendant, as guarantor of Virgin Islands Alumina Corporation, individually and f/k/a, d/b/a and/or successor in liability to Virgin Islands Alumina, Inc., and Century Aluminum Corporation, (hereinafter collectively "Vialco"), to cover all of Lockheed Martin's past, current and future costs and expenses related to remediation and restoration of the former St. Croix Alumina Facility ("Alumina Facility") on St. Croix, U.S. Virgin Islands.  Lockheed Martin seeks indemnification pursuant to the terms of a 1989 Asset Purchase Agreement ("APA") through which Vialco purchased the Alumina Facility from Lockheed Martin's predecessor Martin Marietta.  Pursuant to a Guarantee executed on April 26, 1989 ("Guarantee"), the above-named Defendant stands in the shoes of Vialco.  Copies of the APA and Guarantee are attached to this Complaint as Exhibits 1 and 2.

Of significance to this case, the APA defines the parties' obligations for liabilities arising from environmental conditions existing at or before the closing date of the 1989 sale ("Pre-Closing Environmental Conditions"). The APA states that the parties would share equally any liabilities for Pre-Closing Environmental Conditions exceeding $2 million, but less than $70 million. The APA makes Vialco solely responsible for liabilities in excess of $70 million and for any environmental conditions created after the closing or that resulted from Vialco's or its affiliates' activities at the Alumina Facility. Most importantly, the APA states that upon Vialco's sale or transfer of the Alumina Facility to an unrelated third party, Lockheed Martin's obligations under the APA terminate.

As more fully set forth below, liabilities did arise from environmental conditions at the former Alumina Facility, and Vialco did sell the Alumina Facility to an unrelated third party. Pursuant to the plain language of the APA, therefore, all environmental liabilities are the responsibility of the above-named Defendant, as Vialco's guarantor. Lockheed Martin is entitled to full indemnification for all past, current and future costs and expenses related to the remediation and restoration of the Alumina Facility.

## THE PARTIES

1.      Lockheed Martin is a Maryland corporation with its principal place of business in Bethesda, Maryland. Lockheed Martin is a global security and aerospace company that is principally engaged in the research, design, development, manufacture, integration and sustainment of advanced technology systems, products and services.

2.      Lockheed Martin is successor in interest to Martin Marietta Corporation and its subsidiaries Martin Marietta Aluminum, Inc., Martin Marietta Alumina, Inc. and Martin Marietta Aluminum Properties, Inc. (collectively "Martin Marietta"). Martin Marietta owned

the Alumina Facility from approximately 1972 to 1989.  It operated the Alumina Facility

beginning in approximately 1972 until it ceased operations in 1985.

3.      Upon information and belief, Defendant Glencore, Ltd. was and now is a foreign

business corporation with an office and its principal place of business in Switzerland, with an

office and place of business at Three Stamford Plaza, 301 Tresser Boulevard, Stamford,

Connecticut 06901-3244.  Glencore, Ltd. operated as a subsidiary of Glencore plc.  Upon

information and belief, Clarendon, Ltd. was the name of Glencore Ltd. until 1994, when the

name was changed.  Defendant Glencore, Ltd., individually and f/k/a, d/b/a and/or successor in

liability to Clarendon, Ltd. is hereinafter referred to as "Glencore."

4.      Upon information and belief, Glencore's parent company, Glencore plc, is a

significant shareholder of Vialco's parent company, Century Aluminum Company.

5.      Upon information and belief, Glencore is successor to Clarendon, Ltd., the entity

that guaranteed Vialco's obligations under the APA, and as such has assumed Clarendon's

obligations under the Guarantee.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§ 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant,

and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  This Court has

jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28

U.S.C. § 2201 *et seq.*

7.      This Court has personal jurisdiction over Defendant because Defendant transacts

business in New York.  In addition, the APA and Guarantee, which give rise to this suit, were

negotiated and executed in New York and, upon information and belief, the closing took place at

the New York offices of Vialco's and Glencore's counsel, Curtis, Mallet-Prevost, Colt & Mosle.

8.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action are based upon the APA and Guarantee executed in this District and because Defendant has substantial contacts in this District.  Moreover, Defendant expressly agreed, pursuant to Article 17.02 of the APA and the Guarantee (which incorporates Section 17.02 of the APA), that any legal action arising out of or relating to the APA may be instituted in any State or Federal court in the borough of Manhattan, State of New York. The parties to the APA also agreed, pursuant to Article 17.01, that the APA and the rights of the parties under the APA will be governed by and construed in accordance with the laws of the State of New York.

## SUMMARY OF FACTS

**Site History**

9.      The Alumina Facility was built in 1965 by Harvey Aluminum Virgin Islands, Inc., a wholly-owned subsidiary of Harvey Aluminum Incorporated.

10.     The Alumina Facility was designed to extract alumina, the intermediate product used in making aluminum, from imported bauxite ore.

11.     The extraction process yielded two primary residual substances, sand and bauxite residue.  The bauxite residue is also known as red mud.

12.     Between 1967 and 1972, the red mud was disposed on a part of the Alumina Facility's property currently known as Area B.  Area B was closed in 1972 and was no longer used for red mud disposal.

13.     In 1972, after Martin Marietta Corporation gained a controlling share in Harvey Aluminum Incorporated, Harvey Aluminum Virgin Islands, Inc. was renamed Martin Marietta Aluminum, Inc.

14.     Martin Marietta began storing the red mud produced as part of its operations on a portion of the property known as Area A.

15.     Martin Marietta processed alumina in the Alumina Facility until May 1985, at which time it shut down the Alumina Facility and ceased refining bauxite ore.

16.     On April 26, 1989, Martin Marietta and Vialco entered into the APA through which Vialco purchased the Alumina Facility from Martin Marietta.  Clarendon (now Glencore) unconditionally guaranteed Vialco's APA obligations on the same date.  Upon information and belief, Clarendon and its counsel, Curtis, Mallet-Prevost, Colt & Mosle, were intimately involved in the negotiation of the APA and Guarantee.

17.     Vialco processed alumina at the Alumina Facility until 1995.  During this period, Vialco deposited all of its red mud in Area A.

18.     In April 1995, Century acquired Vialco, and in July 1995, Vialco sold the Alumina Facility to St. Croix Alumina, L.L.C. ("SCA"), a subsidiary of Alcoa Alumina & Chemicals L.L.C. ("Alcoa").

19.     SCA owned the Alumina Facility between 1995 and 2002, but operated it only between 1998 and 2000.  SCA deposited all of its red mud in Area A.

20.     On March 22, 2002, SCA sold the property to St. Croix Renaissance Group, L.L.L.P. ("SCRG").  In connection with its sale of the Alumina Facility property to SCRG, SCA re-graded the red mud piles in Area A.  SCRG is the current owner of the property and is redeveloping it.  SCRG has never operated the Alumina Facility.

**Claims and Lawsuits Concerning Environmental Conditions**

21.     On March 31, 2000, Lockheed Martin received a letter and draft Administrative Order on Consent notifying it that the United States Environmental Protection Agency ("EPA") was preparing to issue an Order against present and former owners and operators of the Alumina Facility, including Lockheed Martin, to undertake the remediation of certain contamination at the Alumina Facility.

22.     The subject of EPA's concern was a plume of liquid phase separated petroleum hydrocarbons ("PSPH"), also known as oil, floating on top of the groundwater underlying the Alumina Facility.  Samples taken from monitoring wells located on the Alumina Facility indicated that the PSPH was released at various times between 1978 and 1991.

23.     On April 6, 2000, Lockheed Martin notified Vialco of the letter and draft Order on Consent from EPA and informed Vialco that, pursuant to the APA, Vialco must indemnify Lockheed Martin against any liability at issue in the EPA letter/order.

24.     On May 26, 2000, counsel for Vialco and Century sent an e-mail to counsel for Lockheed Martin representing his understanding that Vialco would agree to pay Lockheed Martin's costs associated with the draft Order on Consent from EPA.  A true and correct copy of the May 26, 2000 e-mail is attached as Exhibit 3.

25.     By letter dated May 30, 2000, Vialco proposed entering the Order on Consent without requiring Lockheed Martin's participation, while still reserving all of its rights under the APA. A true and correct copy of Vialco's May 30, 2000 letter is attached as Exhibit 4.

26.     By letter dated June 7, 2000, Lockheed Martin responded that it would accept Vialco's suggested approach, also reserving all of its rights under the APA.  A true and correct copy of Lockheed Martin's June 7, 2000 letter is attached as Exhibit 5.

27.     On November 30, 2000, the parties to the EPA's Administrative Order on Consent ("2001 Order on Consent") entered into the St. Croix Alumina Facility Site Participation Agreement  which established the manner and means by which the parties would (a) undertake to satisfy their obligations pursuant to, and otherwise comply with, the terms of the Order and (b) allocate costs they had incurred and would incur pursuant to the Order and pursuant to the Agreement.  Vialco agreed, in Article 6.4.1 of the Site Participation Agreement, to act as the party responsible for payment on behalf of Lockheed Martin.  Specifically, the Agreement provided that "[i]n consideration of this Agreement, the Parties will look to Vialco and not to Lockheed Martin for payment of all amounts owed by Lockheed Martin pursuant to

this Agreement; provided, however, that this agreement to look first to Vialco and not to Lockheed Martin is expressly conditioned upon full and timely payment by Vialco of the monies owed by both Vialco and Lockheed Martin pursuant to this Agreement." A true and correct copy of the Site Participation Agreement is attached hereto as Exhibit 6.

28.     Upon information and belief, Vialco complied with its obligations under Article 6.4.1 of the Site Participation Agreement from December 2000 until October 2016.

29.     In 2005 and 2007, the Government of the Virgin Islands ("USVI") filed two related lawsuits concerning environmental contamination at the former Alumina Facility for which it sought remediation and restoration costs: *Comm'r, Dep't of Planning & Natural Res. v. Century Aluminum Co.*, Civil Action No. 1:05-cv-00062-HB (D.V.I. filed May 5, 2005) (the "2005 Action") and *Dep't of Planning & Natural Res. v. St. Croix Renaissance Group, LLLP*, Civil Action No. 1:07-cv-000114-HB (D.V.I. filed Oct. 18, 2007) (the "2007 Action"). Lockheed Martin, as successor to Martin Marietta, Vialco, Century, Alcoa, SCA, SCRG, HOVENSA, LLC ("Hovensa") and Hess Oil Virgin Islands Corporation ("Hovic") were all named as original parties to the 2005 Action. SCRG was the only party originally named to the 2007 Action. On May 26, 2009, SCRG named Lockheed Martin, Century, Vialco, SCA, Alcoa, Hovensa, Hovic and Virgin Islands Port Authority as third-party defendants to the 2007 Action.

30.     The main focus of the suits was the red mud storage areas, A and B, and groundwater under the entire site. The issues raised in the suits relate to both pre-closing and post-closing environmental conditions.

31.     In the 2005 Action, USVI alleged that the defendants were liable for natural resource damages under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 (Count VI). There were also five counts under Virgin Islands law: strict liability for an abnormally dangerous activity (Count I); negligence (Count II); negligence per se (Count III); public nuisance (Count IV); and a claim

under the Virgin Islands Oil Spill Prevention and Pollution Control Act, 12 V.I.C. § 701, et seq. (Count V).

33.     In the 2007 Action, USVI sought to recover under CERCLA costs for responding to releases or threatened releases of hazardous substances from red mud storage Areas A and B of the Alumina Facility.

33.     On May 19, 2005, after proper and timely notice from Lockheed Martin, Vialco agreed to assume the defense of the 2005 Action on behalf of Lockheed Martin.

34.     Lockheed Martin again notified Vialco of its duty to defend and indemnify Lockheed Martin in a letter dated June 5, 2009, after SCRG named Lockheed Martin as a third-party defendant in the 2007 Action.  On November 19, 2009, Vialco agreed to assume Lockheed Martin's defense, through joint counsel, in the 2007 Action.

35.     On August 2, 2010, joint counsel advised Lockheed Martin that it should retain its own counsel for its defense in the 2007 Action.  Lockheed Martin again notified Vialco, in letters dated August 4, 2010 and August 6, 2010, of its duty to defend and indemnify Lockheed Martin.

36.     On August 11, 2010, Vialco informed Lockheed Martin that Vialco and Lockheed Martin should no longer be represented by joint counsel in the 2007 Action and that Lockheed Martin should promptly retain its own counsel, for whom Vialco would no longer pay. Vialco advised Lockheed Martin that if Lockheed Martin believed its expenses incurred in defending the 2007 Action were recoverable under the indemnity agreement, Lockheed Martin could submit such expenses to Vialco for review and consideration.  Vialco also ceased its defense of Lockheed Martin in the 2005 Action at this time.  Accordingly, Lockheed Martin was forced to retain and pay new and independent counsel to defend it in the 2005 and 2007 Actions as they were nearing preparation for trial.

37.    On February 16, 2011, Vialco informed Lockheed Martin that it did not have a duty to defend or to reimburse Lockheed Martin for its past or future defense costs with respect to both the 2005 and 2007 Actions.

38.    Alcoa and SCRG settled the 2005 and 2007 actions in 2011.  Alcoa agreed to pay $3,000,000 to the USVI and to remediate Area A.  Vialco and Lockheed Martin did not settle at that time.

39.    In December 2013, USVI, Lockheed Martin and Vialco participated in settlement discussions with the assistance of a court-appointed mediator, but no resolution was reached.

40.    USVI and Lockheed Martin participated in a subsequent mediation in February 2014.  Upon information and belief, Vialco elected not to participate in the February 2014 mediation due to its alleged lack of monetary resources.

41.    USVI and Lockheed Martin agreed in principle to a settlement agreement in the spring of 2014.  Vialco and Glencore were both notified of the settlement before it was finalized.

42.    Lockheed Martin's settlement of the 2005 and 2007 Actions was memorialized in a Consent Decree that was entered by the U.S. District Court for the U.S. Virgin Islands on July 25, 2014.

43.    Lockheed Martin agreed, pursuant to the Consent Decree, to pay USVI $20,750,000.00 to reimburse USVI for Lockheed Martin's share of past and future response costs for remediation/restoration of portions of the site.  Lockheed Martin made that payment on August 22, 2014.

44.    Lockheed Martin also agreed to do substantial future remedial and restorative work on portions of the site, including: (1) stabilizing, contouring, and closing Area B; (2) remediating and closing the Dewatering Pond located within Area B; (3) eliminating the discharge of groundwater containing site-related contaminants into the western and northern portions of the Alucroix Channel; (4) implementing stormwater management facilities; and (5)

operating, maintaining, monitoring, and inspecting the remediation/restoration activities undertaken by Lockheed Martin pursuant to the Consent Decree.

45.     Lockheed Martin is now incurring costs for remediation work on the site and has entered into contracts with outside vendors to perform remediation/restoration work in accordance with the Consent Decree.

46.     The United States was not a party to any of the above litigation and has not waived any rights that it may have to seek remediation or restoration costs and/or to require that private parties perform additional remediation and restoration work at the site.

47.     On or about March 7, 2017, Vialco informed Lockheed Martin that it would no longer fulfill its obligations under the Site Participation Agreement to pay for Lockheed Martin's share of the costs associated with the 2001 Administrative Order on Consent.  On or about the same day, Vialco informed Lockheed Martin and the other parties to the Site Participation Agreement that Vialco would no longer fulfill its obligations to pay its own share of costs associated with the 2001 Administrative Order on Consent.

48.     Lockheed Martin is now incurring costs for the remediation work being performed pursuant to the 2001 Administrative Order on Consent.

**Glencore Stands in the Shoes of Vialco Pursuant to the Guarantee**

49.     Vialco's obligations under the APA were unconditionally guaranteed by Clarendon (now Glencore) on April 26, 1989, as an inducement for Martin Marietta Corporation to enter into the APA.

50.     The Guarantee provides that "[t]he Guarantor hereby [] unconditionally guarantees, *as primary obligor and not merely as surety*, the timely performance and payment by Vialco of all of Vialco's obligations to [Martin Marietta] under or in connection within the Agreement."  (Emphasis added.)  Not only is Glencore 100% liable for Vialco's obligations, therefore, but Lockheed Martin, as successor to Martin Marietta, also may demand performance

from Glencore of Vialco's obligations under the APA without first seeking performance from Vialco.

51.     In addition, the Guarantee provides that the "[G]uarantor shall pay to [Martin Marietta] all reasonable costs and expenses, including attorney's fees, incurred by it in enforcing the Agreement or this Guarantee."

52.     The Guarantee further provides that "[t]he obligations of the Guarantor [] shall not in any way be affected, released or exonerated by (i) the taking of or the failure to take any action against VIALCO or Guarantor as the case may be or any other circumstances which might otherwise constitute a legal or equitable discharge or defense of the Guarantor. ..." Thus, Glencore's liability is not contingent upon Vialco's inability to pay.

53.     Additionally, the Guarantee provides that it "is intended to be and shall be construed as a continuing guarantee and shall remain in full force and effect for so long as the [APA] shall remain in effect or there shall exist any liability or obligations of Vialco to [Martin Marietta] thereunder. The Guarantor shall not in any way effect, or cause or permit to be effected, the assignment or transfer of any of its obligations hereunder without the express written consent of MMAPA and Martin Marietta Corporation." Thus, Glencore's obligations under the Guarantee do not expire nor can they be transferred or effected without Lockheed Martin's written consent.

**Glencore's Indemnification Obligations Under the APA**

54.     Article Ten of the 1989 APA defines Pre-Closing Environmental Conditions and describes the Parties' mutual indemnification obligations should liabilities arise from such Pre-Closing Environmental Conditions at the Alumina Facility site. Article Sixteen of the 1989 APA addresses how the parties' obligations under the APA would change should Vialco sell the Alumina Facility to a third party (which Vialco did in 1995). Read together, these Articles of the APA render Glencore, as Vialco's Guarantor, responsible for all liabilities arising from the

Pre-Closing Environmental Conditions at issue in the 2005 and 2007 Actions and in the 2001 Administrative Order on Consent.  Glencore therefore is obligated to provide Lockheed Martin with a full indemnity for all related costs, fees, and settlement or other payments by Lockheed Martin, including but not limited to the costs involved in complying with the 2001 Administrative Order on Consent, the $20.75 million settlement payment to the USVI Government, the costs of complying with the 2014 Consent Order, attorneys' fees, expert costs and other litigation expenses incurred in the defense of the 2005 and 2007 Actions.

55.     Article 10.01 of the APA defines Pre-Closing Environmental Conditions as "[c]onditions existing at or before the Closing, pertaining to surface or subsurface conditions, soil or the groundwater with respect to the Land, to the extent, and only to the extent, that such conditions, pursuant to Legal Requirements as in effect on the Closing Date and applicable to the Assets and the Facility in its shut-down condition:

> (i)     require (with or without notice or a Judgment with respect thereto) remedial investigation and/or action and/or suits, actions or other proceedings for remedial action, study or investigation and/or
>
> (ii)    give rise to Judgments, claims, demands, penalties, costs, and/or other liability of any nature of the Purchaser and/or any of Purchaser's Affiliates."

56.     The 2005 and 2007 Actions arise from Pre-Closing Environmental Conditions, in that they seek to redress soil and groundwater contamination at and emanating from the former Alumina Facility, particularly from the red mud storage Areas A and B that Martin Marietta and/or its predecessor used for disposal purposes during their operation of the Alumina Facility.

57.     The Site Participation Agreement and the 2001 Administrative Order on Consent similarly arise from Pre-Closing Environmental Conditions, to the extent that they seek to redress PSPH contamination at the former Alumina Facility that was alleged to have occurred in part prior to Vialco's purchase of the facility.

58.     Article 10.02 of the APA addresses the Parties' mutual indemnification obligations for Pre-Closing Environmental Conditions.  Section 10.02 states:

> With respect to Pre-Closing Environmental Conditions, the parties shall have the following responsibilities:  (a) Purchaser shall be responsible for, and shall indemnify, save and hold Seller and its Affiliates harmless against, the first $1,000,000 arising therefrom (determined in the aggregate), (b) Seller shall be responsible for, and shall indemnify, save and hold Purchaser and its Affiliates harmless against, the next $1,000,000 arising therefrom (determined in the aggregate), (c) each of Purchaser and Seller agrees to be responsible for, and each shall indemnify, save and hold the other and their respective Affiliates harmless against, 50% of the amount arising therefrom suffered or incurred in an aggregate amount exceeding $2,000,000 but less than $70,000,000 and (d) Purchaser shall be responsible for, and shall indemnify, save and hold Seller and its Affiliates harmless against the amount arising therefrom which is not otherwise the responsibility of Seller hereunder (including in respect of Pre-Closing Environmental Conditions of which Purchaser has not given notice to Seller within the four-year period as provided in the following sentence).

59.     Article 10.02 also provides that the Seller [Martin Marietta] is responsible for indemnification only "if and to the extent that, on or prior to the fourth anniversary of the Closing Date Purchaser [Vialco] shall have given Seller notice" that compliance with legal requirements mandates remedial investigation and/or an action, or suit or other proceeding has been filed or commenced against the purchaser.

60.     Specifically, Article 10.02 provides that "Purchaser shall be responsible for, and shall indemnify, save and hold Seller and its Affiliates harmless against the amount arising therefrom which is not otherwise the responsibility of Seller hereunder (including in respect of Pre-Closing Environmental Conditions of which Purchaser has not given notice to Seller within the four-year period . . .)."  In other words, if no notice of any of the matters for which Lockheed Martin is seeking indemnity was received within four years of the 1989 Closing Date, and remedial actions are required, Glencore is responsible for indemnifying Lockheed Martin for any actions required to be taken.

61.     Vialco did not provide notice of the Pre-Closing Environmental Conditions that are the subject of the 2005 and 2007 Actions on or before the fourth anniversary of the APA's Closing Date.  Furthermore, Article 10.02 provides that even if Vialco did provide proper notice pursuant to the terms of the APA, Glencore still would be responsible for indemnifying Lockheed Martin for half of its payments relating to Pre-Closing Environmental Conditions up to $70,000,000 and all payments above that amount.

62.     Vialco also did not provide notice of the Pre-Closing Environmental Conditions that are the subject of the Site Participation Agreement and the 2001 Administrative Order on Consent on or before the fourth anniversary of the APA's Closing Date.  Furthermore, even if Vialco did provide proper notice pursuant to the terms of the APA, Glencore still would be responsible for indemnifying Lockheed Martin for the first million dollars in costs, half of its payments relating to Pre-Closing Environmental Conditions above $2,000,000 up to $70,000,000 and all payments above $70,000,000.

63.     In addition, Article 10.03 of the APA provides that Vialco is obligated to indemnify Lockheed Martin for, among other things, "all environmental conditions at the Facility from and after the Closing which are not Pre-Closing Environmental Conditions."  Thus, to the extent the 2005 and 2007 Actions or the 2001 Administrative Order on Consent arose from non-Pre-Closing Environmental Conditions, Glencore, as Vialco's guarantor, is responsible for all liabilities and costs arising therefrom and is obligated to provide Lockheed Martin with a full indemnity for all related costs, fees, and settlement or other payments by Lockheed Martin.

64.     Article 16.02 of the APA states that the APA "shall be binding on, and shall inure to the benefit of, the parties hereto and their respective successors and assigns."  The APA therefore inures to the benefit of Lockheed Martin as successor to Martin Marietta.  Similarly, as successor to Clarendon, Glencore is bound by the provisions of the APA.

65.     Article 16.02 also explicitly states, "Notwithstanding the foregoing, ***upon any sale or transfer of the Facility, or any transfer or sale of control of the entity which owns the***

*Facility, to a party which is not an Affiliate of the Purchaser, Seller's obligations (but not its rights) under this Agreement shall terminate.*" (Emphasis added.)  Thus, if Vialco transferred control of the Alumina Facility to a non-affiliate, Martin Marietta's obligations of indemnification to Vialco would be terminated, but Vialco's obligations to Martin Marietta would survive.

66.     Indeed, Vialco did sell the Alumina Facility to an unaffiliated third party.  On July 19, 1995, Vialco sold the Alumina Facility to St. Croix Alumina, a subsidiary of Alcoa. Accordingly, Lockheed Martin's obligations under Article Ten, to the extent any such obligations ever existed, terminated on July 19, 1995.  All liabilities relating to Pre-Closing Environmental Conditions therefore properly belong to Glencore.

67.     On or about February 10, 2014 and thereafter, Lockheed Martin notified Glencore that  Lockheed Martin expected Glencore to provide indemnification for all of Lockheed Martin's costs related to the defense of the 2005 and 2007 Actions and the remediation and restoration work at the Alumina Facility pursuant to the Guarantee.

68.     Glencore has failed to indemnify Lockheed Martin for any of its costs related to Lockheed Martin's defense and settlement of the 2005 and 2007 Actions.

69.     Specifically, Glencore has refused to indemnify Lockheed Martin for the $20.75 million payment Lockheed Martin made to the U.S.V.I. Government to settle the 2005 and 2007 Actions in violation of Glencore's obligations under Articles Ten and Sixteen of the APA.

70.     Glencore has refused to indemnify Lockheed Martin for all additional amounts Lockheed Martin has paid to meet its obligations under the 2014 Consent Order.

71.     Glencore has refused to indemnify Lockheed Martin for the attorneys' fees it paid to defend the 2005 and 2007 Actions since August 2010 after Vialco dropped its defense of Lockheed Martin in the 2005 and 2007 Actions.

72.     On or about March 6, 2017, Lockheed Martin notified Glencore that Lockheed Martin expected Glencore to provide indemnification for all of Lockheed Martin's costs related

to the remediation work performed under the Site Participation Agreement and the 2001
Administrative Order on Consent pursuant to the Guarantee.

73.    Glencore has failed to indemnify Lockheed Martin for any of the costs related to
the Site Participation Agreement and the 2001 Administrative Order on Consent that Lockheed
Martin has incurred or will incur as a result of Vialco's failure to make payments on behalf of
Lockheed Martin pursuant to the Site Participation Agreement.

## COUNT I: BREACH OF CONTRACT
## (2005 AND 2007 ACTIONS AND CONSENT ORDER)

74.    Lockheed Martin repeats, realleges and incorporates by reference each and every
allegation set forth above, as though fully set forth herein.

75.    Martin Marietta and Vialco willingly and purposefully entered into the APA, a
valid agreement concerning the sale of the Alumina Facility to Vialco, on April 26, 1989.

76.    In the Guarantee dated April 26, 1989, Clarendon (now Glencore) expressly
promised to act as Guarantor of Vialco's financial obligations under the APA.

77.    Lockheed Martin, as successor to Martin Marietta, performed all of its duties and
obligations under the APA.

78.    Because Vialco sold the Alumina Facility to an unrelated third party in July 1995,
Lockheed Martin's obligations under the APA, including any obligation to indemnify Vialco for
any liabilities related to Pre-Closing Environmental Conditions, terminated in July 1995.
Glencore therefore is solely responsible for all liabilities relating to Pre-Closing Environmental
Conditions, including providing a full indemnification to Lockheed Martin for all costs,
expenses, fees, and other amounts Lockheed Martin has paid and has been required to pay
related to Pre-Closing Environmental Conditions.

79.     Pursuant to Article 10.03 of the APA, Glencore is obligated to indemnify Lockheed Martin for all other costs related to environmental conditions at the Alumina Facility site that were not Pre-Closing Environmental Conditions.

80.     All amounts that Lockheed Martin has paid in the defense and settlement of the 2005 and 2007 Actions and to otherwise comply with the Consent Order are related to environmental conditions at the Alumina Facility site and are subject to Glencore's indemnification obligations.

81.     Glencore breached its obligations under the Guarantee and Articles 10.02, 10.03 and 16.02 of the APA by failing to fully indemnify Lockheed Martin for any and all costs Lockheed Martin incurred related to the defense of the 2005 and 2007 Actions, including but not limited to costs to comply with the 2014 Consent Order, attorneys' fees, expert costs, settlement payments, and other litigation expenses.

82.     As a result of Glencore's breach, Lockheed Martin has been damaged in an amount to be determined at trial but including: a) all of its costs defending the 2005 and 2007 Actions; b) the cash payment to settle the 2005 and 2007 Actions; c) all of its costs to perform remediation/restoration of the Alumina Facility; d) all of the costs it will incur to pay for remediation/restoration in the future related to the Alumina Facility; e) all of its costs incurred in enforcing the APA and bringing this suit; and f) any other damages incurred as a result of Glencore's breach.

## COUNT II: BREACH OF CONTRACT
### (2001 ORDER ON CONSENT)

83.     Lockheed Martin repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

84.     Martin Marietta and Vialco willingly and purposefully entered into the APA, a valid agreement concerning the sale of the Alumina Facility to Vialco, on April 26, 1989.

85.    In the Guarantee dated April 26, 1989, Clarendon (now Glencore) expressly promised to act as Guarantor of Vialco's financial obligations under the APA.

86.    Lockheed Martin, as successor to Martin Marietta, performed all of its duties and obligations under the APA.

87.    In furtherance of Vialco's obligations under the APA, Lockheed Martin and Vialco willingly and purposefully entered into the Site Participation Agreement, a valid agreement among all of the responsible parties to the 2001 Order on Consent, setting forth Vialco's obligation to pay for Lockheed Martin's share of certain remediation/restoration work at the Alumina Facility pursuant to the 2001 Administrative Order on Consent as well as Vialco's own share of such costs.

88.    Because Vialco sold the Alumina Facility to an unrelated third party in July 1995, Lockheed Martin's obligations under the APA, including any obligation to indemnify Vialco for any liabilities related to Pre-Closing Environmental Conditions, terminated in July 1995. Glencore therefore is solely responsible for all liabilities relating to Pre-Closing Environmental Conditions, including providing a full indemnification to Lockheed Martin for all costs, expenses, fees, and other amounts Lockheed Martin has paid and has been required to pay related to Pre-Closing Environmental Conditions.

89.    Pursuant to Article 10.03 of the APA, Glencore is obligated to indemnify Lockheed Martin for all other costs related to environmental conditions at the Alumina Facility site that were not Pre-Closing Environmental Conditions.

90.    All costs that Lockheed Martin has incurred or will incur in connection with fulfilling its obligations under the Site Participation Agreement and the 2001 Administrative Order on Consent are related to environmental conditions at the Alumina Facility site and are subject to Glencore's indemnification obligations under the Guarantee.

91.     Glencore breached its obligations under the Guarantee by failing to indemnify Lockheed Martin for any and all costs Lockheed Martin incurred or will incur related to the Site Participation Agreement and the 2001 Administrative Order on Consent.

92.     As a result of Glencore's breach, Lockheed Martin has been damaged in an amount to be determined at trial but including: a) all of its costs to comply with the Site Participation Agreement and the 2001 Administrative Order on Consent and b) any other damages incurred as a result of Glencore's breach.

## COUNT III: BREACH OF GUARANTEE AGAINST GLENCORE

93.     Lockheed Martin repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

94.     Vialco is obligated under the APA to indemnify Lockheed Martin for any and all costs Lockheed Martin incurs related to the defense of any suits brought against Lockheed Martin concerning environmental conditions at the Alumina Facility and any remediation/restoration costs associated with any such conditions.

95.     Vialco is obligated under the APA to indemnify Lockheed Martin for Lockheed Martin's costs related to the remediation work performed pursuant to the 2001 Administrative Order on Consent and the Site Participation Agreement and the 2014 Order on Consent.

96.     Vialco has breached its obligations under Articles 10.02, 10.03 and 16.02 of the APA by failing to fully indemnify Lockheed Martin.

97.     Glencore voluntarily and expressly promised to act as Vialco's Guarantor and provided an absolute and unconditional continuing guarantee of Vialco's indemnity obligations under the APA, which  includes the obligations Vialco accepted under the Site Participation Agreement pursuant to the APA's indemnity requirements for Vialco and the obligations it incurred to indemnify Lockheed Martin for defense and settlement of the 2005 and 2007 actions.

98.     Lockheed Martin has incurred significant costs related to remediation/restoration of the Alumina Facility.

99.     All such past costs and those which may be expended in the future by Lockheed Martin related to remediation/restoration of the Alumina Facility represent a debt of Vialco and Glencore which Lockheed Martin has paid and will continue to pay until Glencore performs pursuant to its Guarantee.

100.    Glencore breached its Guarantee dated April 26, 1989 by failing to perform and fulfill its obligations as Vialco's Guarantor to indemnify Lockheed Martin.

101.    As a direct and proximate result of Glencore's breach of the Guarantee, Lockheed Martin has been damaged in an amount to be determined at trial but including: a) all of its costs defending the 2005 and 2007 Actions; b) the cash payment to settle the 2005 and 2007 Actions; c) all of its costs to perform remediation/restoration of the Alumina Facility; d) all of the costs it will incur to pay for remediation/restoration in the future related to the Alumina Facility; e) all of its costs to comply with the Site Participation Agreement and the 2001 Administrative Order on Consent; f) all of its costs incurred in enforcing the APA and bringing this suit; and g) any other damages incurred as a result of Vialco's breach of the APA and Glencore's breach of the Guarantee.

## COUNT IV: DECLARATORY JUDGMENT – CONTRACTUAL INDEMNIFICATION OBLIGATIONS AND GUARANTEE

102.    Lockheed Martin repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

103.    Vialco has breached its obligations under Articles 10.02, 10.03 and 16.02 of the APA by failing to fulfill its obligations to indemnify Lockheed Martin.

104.    Vialco has breached its obligations under the APA by failing to act as the party responsible for payment on behalf of Lockheed Martin under the Site Participation Agreement.

105.    Glencore provided a Guarantee of all of Vialco's obligations under the APA, which includes any obligations Vialco has assumed pursuant to the APA.

106.    Glencore is obligated to Lockheed Martin as guarantor of Vialco's indemnification obligations under the APA.

107.    Glencore has breached its Guarantee of Vialco's obligations.

108.    Lockheed Martin is entitled to a declaratory judgment that because of the Guarantee, Glencore stands in the shoes of Vialco and is obligated to indemnify Lockheed Martin pursuant to the APA; that Glencore has breached its obligations under the APA and that Glencore is obligated to indemnify Lockheed Martin for any and all costs Lockheed Martin has incurred related to the defense and settlement of the 2005 and 2007 Actions; that Glencore has breached its obligation to Guarantee Vialco's obligations under the Site Participation Agreement and that Glencore is obligated to indemnify Lockheed Martin for any and all costs Lockheed Martin has or will incur related to compliance with the Site Participation Agreement and the 2001 Administrative Order on Consent.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Lockheed Martin demands judgment as follows:

A.    As to Count I, award judgment for Plaintiff Lockheed Martin and against Glencore for the damages resulting from Glencore's breach of contract and its Guarantee of Vialco's obligations under the APA in an amount to be proven at trial but no less than all past and future costs incurred by Lockheed Martin in relation to environmental conditions at Alumina Facility including attorneys' fees, expert costs and other costs to defend the 2005 and 2007 Actions;

B.    As to Count II, award judgment for Plaintiff Lockheed Martin and against Glencore for the damages resulting from Glencore's breach of contract and its Guarantee of Vialco's obligations under the Site Participation Agreement in an amount to be

proven at trial but no less than all past and future costs incurred by Lockheed Martin in relation to environmental conditions at the Alumina Facility including costs to comply with the Site Participation Agreement and 2001 Administrative Order on Consent;

C.  As to Count III, award judgment for Plaintiff Lockheed Martin and against Glencore resulting from Glencore's breach of Guaranty by failing to perform on its Guarantee of Vialco's liability and Vialco's obligation to indemnify Lockheed Martin under the APA, for damages in an amount to be proven at trial but no less than all past and future costs incurred by Lockheed Martin in relation to environmental conditions at the Alumina Facility including attorneys' fees, expert costs and other costs to defend the 2005 and 2007 Actions and in connection with the Site Participation Agreement and the 2001 Administrative Order on Consent;

D.  As to Count IV, enter a declaratory judgment for Plaintiff Lockheed Martin and against Glencore declaring and decreeing that Vialco has breached its obligations under the APA and the Site Participation Agreement and that Glencore is obligated to indemnify Lockheed Martin pursuant to its Guarantee of Vialco's obligations under the APA.

E.  Award Plaintiff Lockheed Martin its attorneys' fees and costs incurred in connection with this action; and

F.  Award Plaintiff Lockheed Martin such other and further relief as the Court deems just and proper.

Dated: October 13, 2017

BEVERIDGE & DIAMOND, P.C.
John S. Guttmann (JG 7601)
Paula J. Schauwecker, (PS 3449)
477 Madison Avenue, 15th Floor
New York, NY 10022
Tel: (212) 702-5400 / Fax: (212) 702-5450
JGuttmann@bdlaw.com
PSchauwecker@bdlaw.com

Robert Brager, (RB 4196)
Roy D. Prather III (*admitted pro hac vice*)
201 North Charles Street, Suite 2210
Baltimore, MD 21201
Tel: (410) 230-1310 / Fax: (410) 230-1389
RBrager@bdlaw.com
RPrather@bdlaw.com

*Counsel for Lockheed Martin Corporation*